Morning, your honors. May it please the court. There are three uncontested facts in this case which compel the reversal, if fairness is to prevail in this case. The first fact, Mrs. Lamid is an innocent spouse who had no connection whatsoever to her husband's conduct. In fact, she suffered from severe mental illness, schizophrenia, and had been interdicted for some 12 years. That interdiction was on the public record. Second, the property in question was not a fruit of the crime and had been owned for years, decades, before the criminal case. And Mrs. Lamid had a community property interest in that property, a vested undivided interest. Third fact, the government concedes and admits at page 27 of its brief, and I quote, quote, the United States does not dispute that under federal case law, an innocent spouse's property interest in a substitute asset is not subject to forfeiture under 21 U.S.C. section 853, citing the Lester case. I don't know if we have any tennis players on the panel, but in the tennis world, we say game, set, match. Well, I think there are some other scoring that we need to deal with. Why don't you move on? I'm going to do that. These facts and substantive law, in my view, in our view, Your Honors, compel a reversal. The government, however, in our view, relies upon technical alleged violations of procedural provisions to deny what is clearly the right result, to let this lady and her heirs have her property. Well, Counselor, you seem to be arguing that justice requires recognition of this, but obviously in court, those issues had to be brought up properly. Are you saying this overarching sense of that she was entitled to this makes these procedural issues irrelevant? No, sir. What I'm saying is that if there are procedural issues here which somehow impair or defect the ability for her to have made a proper claim in proper form, etc., then the district court should have been more aware about it, but you're saying orally at this status conference prior to the ruling, the initial ruling by the court, the possibility of an amendment was raised. Yes, sir, and I can't tell Your Honor definitively that that's in a pleading in front of the district judge, but it surely was before the district court because we asked for it. Meaning you asked for it beyond just having it as a few sentences in your . . . Yes, sir. . . . responsive pleading. Yes, sir. Okay. The government argues that because Dr. Lammed was found to be incompetent, incapable, not incompetent, he was found to be incapable of assisting in his own defense, that the power of attorney he gave to his son to protect Mrs. Lammed's property interest is invalid. They're wrong. The level of competence required to assist in a criminal defense is much higher than the cognition required by an individual who's impaired and knows he needs someone else to handle their affairs. The level of competence required of a criminal defendant to assist his counsel in preparing a defense, in preparing testimony, etc., requires a pretty sharp cookie. To understand as an individual as Dr. Lammed was, you know, I'm not thinking so clearly and I need to give my power to do things for my wife and my children to someone else, I suggest to the court, is a different level of cognition. The other criminal case was stayed because of a finding of incompetence on the defendant's part. Why didn't you ever ask to stay, I guess it was already at the sentencing stage, but to stay sentencing here and raise an issue of competence? Because I believe the competency issue was not raised in the first criminal case. It was raised in the second criminal case. I'm asking . . . that's exactly what I'm asking. Why wasn't it raised in this case? Your Honor, I can't answer that. We were not counsel of record, no criminal counsel for the defendant at the time and in no relationship with the defendant. It was separate counsel. Let me ask you another question about what happened below. Your client files the notice of the claim. It takes over two years for the government to file the motion to dismiss. Basically nothing is going on in the docket for two years. What in reality was happening? Well, in reality, these people, Rudy Lammed and his disabled brother, were struggling to make ends meet. I mean, there was nothing that the government was filing against them that was trying to dispossess them of their interest in their mother's property, and they were hopeful that the government would come to the realization, this is enough. I mean, we've extracted enough from these people, and we're going to let this matter pass and let their property pass to . . . Mrs. Lammed's property, a separate undivided interest property, pass to her children. And then the government reared its head and said, oh no, we want that too. And that's the chronology as best I know it, Your Honor, please. Again, the government wants to, in this instance, as we told you, wants to have it both ways. Either Dr. Lammed was incapacitated and could not execute the power of attorney, nor accept service on behalf of his interdicted wife, or he had the capacity to execute the power of attorney. Isn't there a procedure under Louisiana law if the husband was the one who was appointed, given the wife's status, and if he is no longer competent, your client could have gone to the Louisiana court and asked to be appointed in his place, but that never happened, right? Correct. And there's a reason for that. The reason for that is he had 30 days to do it. And this is a period of time where we were not in the case, and the Lammeds on the civil side were without representation. And what's the 30 days? He had 30 days from what to do what? 30 days to perfect the claim once the government filed its notice of intent to seize the property. He had 30 days to do that. So all you had to do was . . . We're probably headed the same way. So once you do that, you still would have time to go into Louisiana court, get the appointment, file some amended pleading in federal court. It's not as if the door was closed to try to correct whatever the Louisiana procedure required. No, sir. It wasn't closed, but it was not one that we could walk through with competence and knowledge and understanding. And my suggestion to the court is . . . Well, you didn't do it. Pardon me? You didn't do it. That much is clear. Also, even if you couldn't do it practically in 30 days, you could have told the federal court, this is what's going on. We're letting you know, can you extend our 30-day window? But the problem is, the claim says nothing about the status of Mrs. Lamid or anything else. But the government knew that. The government knew that Mrs. Lamid was incapacitated. The government, when they checked the records of the Jefferson Parish property, which they now want to seize and take from her and her children, on the face of the public record is the fact that she is interdicted. So when they did their record search, all they had to do was look at the property and see she was interdicted and incapable, legally, of making determinations. Where in the record does it show that the . . . I mean, I know the property records would often show that, but where in the record does it show that that was actually in the property records in this case? It does not. What is in the record of the case is that she was interdicted and interdicted for 10 years prior to this. It is in the record of this case that that interdiction is on the face of the public record, which I'm assuming the government checked. I don't have a fact or an evidentiary point that they checked the public record before trying to grab somebody's property. That's what's done in all instances when somebody's trying to grab somebody else's property. You check the public record. Let me talk about the signing requirement for a moment. 21 U.S.C. 853 does require a signing on a penalty of perjury and is strictly construed. We agree with that. However, the filing of false or frivolous claims, that's the reason behind the requirement. In this case, the claim is neither false nor frivolous, and the government knew that. The government listed these assets, this property, and knew that she had an interest in it. For instance, if Your Honor, please, at record citation 30208702, the settlement agreement and final order of forfeiture at page 1, paragraph 3, I quote, the United States recognizes that Mrs. Lammett has a valid interest in these properties based on the community property laws of Louisiana. They knew that she was disabled, and they knew that she had a valid interest under the community property laws, period. Once again, we submit that this is a form over substance. The substance being, and I come back to it because it's, of course, true, this is an innocent, incompetent spouse, period. What the court should be doing is figuring out a way to get her that through which she is legally entitled, not figuring out a way to prevent it. That's what we told the district court. Let me ask you this. If we said, you're arguing the district court should have granted leave to amend, let's say we agree with you on that, what would you go back and how would you amend the claim? We would amend the claim by having Mr. Lammett's signature attested to, filed in proper form with an affidavit and notarized, none of which got taken place at the time, and put that affidavit in proper form and put it before the court. In what role would he be filing? Well, initially, he would file in the role as, for his mother, who was interdicted under the power of attorney. Now, he would probably file as the executor of the estate and a beneficiary of the estate of his mother, of which there is no estate of this property that's taken away from her. So he would file on that basis. He died intestate? He did. Okay. So there is no executor, though that may not be a Louisiana term, I'm not sure, but there's no will to administer him. No, he's, but by operation of law, he Right, so I'm just not sure what his title would be. I think it's executor. Administrator. Administrator. Okay. So he would come in as administrator and say, this estate has a claim to this property, perfect that claim technically, and let the district court rule upon whether or not they're entitled to it. And I'm not, other than these technical violations, other than we didn't cross that T, we didn't dot that I, what is the government's substantive opposition to this separate property, to her property? Quite sympathetic, but I would say the problem we have, it may be beyond T's being crossed and I's. I mean, we need a claim actually filed on her behalf. And obviously what we're talking about is whether a claim was ever filed on her behalf. No, sir. But, Your Honor, I think one was. Verified notice of claim and application for adjudication of validity of interest in forfeited property is in the record. It's at record citation number 3 0 2 0 8 6 3 5, in which there is a verified notice of claim for adjudication of validity of her interest in the forfeited property. And there on page one of the four pieces of property that we're talking about and attached, attached to this verified claim is Mr. Rudy Lambert's verified affidavit of which they have a problem with which they have a problem of which they complain. So we did file a claim. They were on notice. They knew it all along. And for some reason, as Your Honor pointed out, after a delay of a year and a half or two years, they said, Oh, wait a second. Give us that property too. And more importantly, counsel, here's here's one of the things I think I'm thinking about is listen to Judge Southwick ask these questions is if if it's true that he had no authority to file a claim on behalf of his mother at the time the original claim was filed and he were allowed leave to amend and then come in, as he suggests, as the administrator of the estate, that capacity derives from the time she died, which would have been at some date later than the time when the original claim was filed. And I think if my memory serves me correctly, the government uses the phrase new claim in some of its briefs. Why wouldn't it be then a new claim as opposed to an amended claim? And how do you how do you say that it relates back? Because it derives from a claim of which he was possessed before his mother died. And it would simply be sort of like substituting his new role for the same piece of property for the same allegation. It'd be a substitution in his role, not a substitution of parties and not a new claim because a new claim relates to the property. It relates to the property. So the claim is not new. The person asserting the claim is not new. It's his role may have changed, but that again, where I come from, is kind of hopefully a technicality. Let me address Your Honor's question about the curator issue. The undercurator, he could have gone and done the things that he did, but the undercurator statute, the code says, and we cited the Court to the Helm case in Louisiana Fourth Circuit, and I quote, the law clearly sets forth that it is the duty of the undercurator to act whenever he or she believes that the best interest of the interdict are contrary to the proposed action by or on behalf of the interdict. So that's a compelling statement which I suggest to the Court as a sort of a catch-all provision. I mean, we're in a very difficult situation here, but that gives him that authority. He is compelled to act in the best interest of the interdict, and he tried to do that. And he tried to do that. See, my time has expired. Thank you, Your Honor. We'll see if your game, set, match stands up. I hope we have that eye in the sky that tells whether or not it's on the line or not, because if it's on the line, the ball's in. Thank you, Your Honor. Good morning, Your Honor. Catherine Mare. Your Honors, I'm sorry. Catherine Mare on behalf of the United States. I do want to address... Can you say your name again? Mare. Mare. I should know this. Thank you. South Louisiana, Your Honor. The United States does not dispute the fact that Mrs. Lamed, if I'm pronouncing it correctly, Lamed, has a community interest in the property that was subject to forfeiture. And we also do not dispute that in the context of a forfeiture ancillary proceeding, that the innocent third party has a right to come in and claim that interest. We do, however, take issue with the fact that this claim was obviously effectively filed on her behalf, because no one with the power to file the claim filed the claim on Mrs. Lamed's behalf. Under Louisiana law, the... Before you leave those opening points, at some point in the district court, the government argued that it would be entitled to seek enforcement of the money judgment against the doctor under the Federal Debt Collection Procedures Act, and the separate obligation of the spouse, the husband, could be satisfied from the community property. Does that mean in your understanding that under the Federal Debt Collection Procedures Act, you could have collected the entirety of the community property? We still can, Your Honor, and I will explain that in great detail, because that's one of the points I'm going to get to, but since you're interested in it, I'll get to it now. Under the Federal Debt Collections Procedure and the Mandatory Victims Restitution Act, the United States is entitled to use state law to satisfy any debt that's owed to it. There are two things going on in this case, and I find them to be extremely confusing in the context of sentencing. We have an order of restitution in which restitution lost to the victim, in this case Medicare, was ordered in the amount of $2.5 million-plus. That's the order of restitution. We go through our financial litigation unit, which is called in our office the Asset Recovery Unit, to recover that amount, and we use the Federal Debt Collections Procedure Act and the Mandatory Victims Restitution Act to collect that money. We also have a criminal forfeiture money judgment. It's in the same amount, because it represents the proceeds of the crime, which in most cases will, at least in a fraud case, mirror what Once the ancillary forfeiture procedure is over, it's our understanding that we still have the criminal money judgment, and to the extent it's unsatisfied, we can collect in our financial litigation unit. More importantly in this case— But you haven't done that, so how does that affect this forfeiture proceeding, other than maybe just saying, even if this forfeiture doesn't go through, we're ultimately going to get the same result anyway? Basically, that's what we're saying. We're also saying, under the Mandatory Victims Restitution Act, not even under forfeiture, and we can leave that alone, we're going to get the money anyway. And the law is clear, and the last case I've cited in the briefs make it clear that under the Mandatory Victims Restitution Act and the Federal Debt Collection Procedures Act, we are going to be able to seize the spouses of the former community, spouses after the former community property. But so how's your argument to be, in the district court at least, that there's no—that the ethics equity here really isn't in favor of the other side, because the money would be the government's, regardless of whether a proper claim had been filed in this forfeiture? And counsel, for the appellant reference to status conference, and he had filed, after we had filed the motion to dismiss the claim, and there had been, of course, the response, the opposition, he had filed a supplemental memorandum. He argued, again, the innocent spouse, and you can't take through one hand what you can't get in another way. And when we went to the status conference, one of the arguments was like, Your Honor, we're going to take it anyway. It's a matter of whether we take it in forfeiture or not. And I do believe, although it doesn't go to the technicalities of the claim, it does go to whether the district court abused its discretion in disallowing the claim in forfeiture, because after all, district court will look at the equities. If you're otherwise denying a spouse what she would be entitled to for some mere technicality, but knowing full well that this goes to collection afterwards, and that we're going to get the property under the Mandatory Victims Restitution Act in conjunction with the Federal Debt Collections Procedure Act, and it's clear that we do that. I will also note that in a separate garnishment proceeding, the United States has already garnished $140,000 in the form of assets held in bank accounts and in retirement, which is referenced in the pre-sentence investigation report as its assets. And we've taken 100 percent of those, even though that was community property, because again, state law allows us to do this. So when you're looking at the equities, and of course, if you're looking at whether the judge is going to exercise his discretion to allow an otherwise defective claim to be filed, that's what the judge was looking at, what Judge Brady was looking at. Again, that does go to what's in the court's mind, and of course, what's fair and what's not fair. As far as this case and the claim itself, Your Honors, I will point out that there was a lot going on in the district court. I know, Judge Costa, you asked about the two-year period. Why did it take so long? The United States Marshal Service has a policy of not wanting to go forward on actually forfeiting and selling real property until there's been a conviction that's been affirmed on appeal. In this case, the defendant, Mr. LeMid, appealed his underlying criminal conviction and sentence to this court, which was affirmed in March 2014. I think the mandate issued at the end of March 2014. At that point, that's when we began in earnest to look at forfeiting the property and going through and seizing and actually selling it. Before that, the Marshal Service won't do it. And there is a . . . They don't incur the expenses of upkeep and everything else. And it becomes a logistical nightmare for both the Marshals and, quite frankly, the Financial Litigation Unit once we've sold property that now has been vacated because of a conviction. What we could seize, we seized. In fact, we went ahead with the cars. And as far as making that settlement on the cars, the cars themselves altogether in Globo had $30,000. That was in 2012. And rather than litigating any claim in forfeiture at that point, we entered into a quick settlement about a month and a half after in 2012 just to get the cars off the books because the storage fees alone in three or four years are going to eat up the car, any profit we would get from the car. I would also just note, and this is an important thing to note in terms of forfeiture, that the more we can get, the more money we can get on a car, the more credit a criminal defendant is going to get in the judgment. So it's not in anybody's interest to sit around and let fees and storage fees and these things accrue because the criminal defendant is going to be tagged with that as well in the sense he's not going to be credited for his loss. Another concern, again, and this is a policy concern, is that although we have another mechanism, and a lot of times it's actually in the defendant's favor for us to proceed and the third party's favor for us to proceed in forfeiture as opposed to asset recovery, the collections route. And this is why, as I mentioned before, we have two judgments. We have an order of restitution, $2.5 million that goes to the victim, Mandatory Victim Restitution Act. We have to collect it. And we also have the order of forfeiture. Those are two judgments. When the amount, the $2.5 million, is satisfied in forfeiture, the policy of the Department of Justice is to move to restore those funds to the victim. So anything that we will get in forfeiture will be restored to the victim and be credited against that $2.5 million judgment of restitution, order of restitution. If we collect it under restitution, it doesn't get credited for forfeiture. So in other words, a lot of times we're successful in telling a spouse who has a legitimate interest in forfeiture, look, if we take it in forfeiture, you're going to get credit under the restitution. If we take it in restitution, there's still that forfeiture judgment out there that needs to be satisfied. Well, let me ask. It's one thing to say what all the government might be entitled to do. There is some indication in the briefing, well, and I go that direction, let me just state, had a proper claim been filed for the wife in whatever way that could have occurred, would the government necessarily have proceeded, I mean, that claim presumably would have been recognized. Does it necessarily follow under, I mean, sort of to make this moot, under DOJ policy or otherwise that you would proceed to use the Fair Debt Collection Procedures Act or something else to fight her claim, to mute her, to make her claim irrelevant? Well, if she had filed a timely claim and if she had filed a valid claim, because the claim was not valid, the initial claim was filed within the 30 days. It just wasn't a valid claim, because Berlini-Lemid was never . . . I'll say that again. I'm not quite hearing you. The initial claim was timely in the sense that a claim, a purported claim, was filed within the 30-day period. Our contention is there is no timely filed claim because there's never been a proper or legitimate or valid claim in front of the court, because no one with authority to represent Mrs. Lemid legally has filed such a claim. Were you sort of skipping ahead? What I was saying, had a valid claim been filed on her behalf, does the mere fact that the government might have some other remedy still to collect necessarily mean they would have used that remedy and would have allowed instead, not the widow yet, the wife to have a half interest in this property? There's a lot in that question. I'm going to unpack it. We don't have much discretion in whether we collect or not on the Mandatory Victim Restitution Act. In other words, we would have recognized her claim in forfeiture. We would have just seized the half interest in those properties in forfeiture. Then when you get to the Mandatory Victim Restitution Act and the Federal Debt Collection Procedures Act, we're going to go forward to do what we can to collect as much as we can. However, I will have one provision on that. We look at each case on a case-by-case basis. We are dealing with an interdicted spouse, which we knew later, of course, was interdicted. We're dealing with a son who also is manly capacitated. We do, and we have in this case in particular, gone through very lengthy settlement negotiations to ensure that no one is thrown out in the street. It is really not the policy of the Department of Justice to do that. It's not even our policy to leave people homeless. So to this extent, and it's reflected in our pleadings at the court below, there were four properties. We have actually just dropped our forfeiture interest in one of the properties, which is South Peters Condominium. It's about less than a mile from here. It's a property worth a good deal of money, and it's got very little debt on it. And so we are not taking that property, and we wouldn't take it in the Mandatory Victims Restitution Act either. But we do, Your Honor, have a real obligation under the Federal Debt Collections Procedure Act, but especially the Mandatory Victims Restitution Act, to do what we can to get as much money for the victims in these cases. Well, let me ask you about the amendment, which might have been a way to get a proper claim filed. My understanding of it was that it was mentioned in a response to a pleading, no motion ever filed. Do you agree with what Mr. Cobb said, that this was raised orally with the district judge at some status conference? Were you not participating at the trial level to know, or is there any evidence of how this was presented to the district judge as opposed to just appearing in some paragraph of a pleading? It was never done in the form of a motion. I was participating in a supervisory capacity at the court below, Your Honor, so I was aware in real time as things were going on. And there was mention that the remedy could be to let us amend the complaint. That's what's in the pleadings. It's not necessarily that, oh, by the way, please let us do it. There may have been some mention that now he could go back in the status conference. The memory is not clear on that on our end, Your Honor, but of course it was not transcribed and so we don't have a clear record of what happened. As a practical matter, I believe the court was led by the fact that understanding the interplay between the Mandatory Victims Restitution Act and the forfeiture proceedings and the fact that there had been no real ask of the court in the months and months and months since the claim had been filed to just amend the complaint, that's an important part of the case. I don't think there was any request for a request for a request for a pleading. I think the court was led by the fact that understanding the interplay between the Mandatory Victims Restitution Act and the forfeiture proceedings and the fact that there had been no real ask of the court in the months and months since the claim had been filed to just amend the complaint, that's an important part of the case. When I was on the district court, that's how, in the normal civil litigation context, that's a common way that people ask to replead is, oh, if you're not going to throw me out, or if you are going to throw me out, let me replead. Why shouldn't that be enough? Your Honor, even if it were enough, it would be untimely, and that's our point. He does not step into the role. But isn't it untimely because you all waited more than two years to file the motion to dismiss more than two years after they filed their claim? Your Honor, we had raised with them during negotiations beforehand that we thought there was a problem with the claim because of the power of attorney. It's not even so much the interdiction issue. It's the fact that you can't, through power of attorney, give away rights you don't otherwise have. The interdiction was in the public record in Jefferson Parish. None of the four properties that were owned and subject to forfeiture are located in Jefferson Parish. They're in Orleans Parish, Harvey's across the river, but it's not in Jefferson Parish, I don't believe. And then you have the domicile, Mrs. Lamont's domicile is in Vanderbilt, which is in, I believe, in St. Tammany Parish. But be that as it may, the defect we pointed out long before we filed the motion, because again, we're not going straight to the forfeiture proceedings. We're going straight to settlement talks on these kind of cases because we understand what's going on here. And we pointed out this is not a valid claim. Even before we filed the motion to dismiss, that was not a surprise to the defendant in any sense. And in no time during those negotiations, we pointed out, was any attempt made to amend the complaint, nor was any attempt made after we filed the motion to go back and say, and it really was incumbent, the under-curator does not have the ability to file anything on behalf of the interdict. If the under-curator sees a problem, he is charged to act by going to the district court in Louisiana and saying, hey, the curator's not protecting this interdict's interest, which was incumbent on the appellant to do so as the under-curator in this case. He was also under duty, and his duties as under-curator are specific in this, in the Louisiana Code, to inform the court if the curator was no longer able to act on behalf of the interdict. Mr. LeMid had one clear disqualification, which was he was a convicted felon. And as a convicted felon, you cannot serve as a curator. And he also may be, and of course they dispute whether he was mentally incapacitated in so much as being, representing her as a curator. But at any rate, Your Honor, this was not a surprise. This was not a surprise when the motion was filed. The delay was two things. Number one, it was, we just didn't move on the property. It sat there until the court decided on appeal. And number two, we filed it about five or six months after this court gave its ruling in the criminal judgment, and at that point, that whole time was spent working on, working out the logistics of the possible settlement. Let me ask you, if an improper claim is filed within 30 days, improper for some procedural, technical reason, do the procedures for forfeiture recognize the right to amend or correct that or do they recognize that a new claim can be filed? I mean, part of the problem here is the long delay, the two years. But I'm asking in a more usual situation, I would think as so much else in federal court, that if you don't do something quite right, the general interest to allow a just result doesn't allow a correction. Is there anything in the procedures of what we're talking about now that would prohibit that? Just as a generic matter, not saying two years, not talking about all the specifics of this case, but just generally, is that permitted? In other words, does the district court have the discretion to allow a claim at this point? I'm not saying at this point. I'm trying to get in the generic situation of the government seeking to forfeit. Someone files a claim within a 30-day period saying, I have an interest in that property, but files it defectively, whether because of something like what we have here or for some other reason. Are you saying that the door closes after 30 days or does the district judge have the right to recognize an amendment by the proper person filing this time or some other correction in the claim? I think the judge for good cause shown could do so, Your Honor. I believe that's the case law in the cases we've cited. The cases we've cited at least say they fail to show good cause or excusable neglect, and I would submit that if they could show good cause or excusable neglect, we might be there, but they don't show real good cause or excusable neglect because they never, at any time that the deficiency of the claim was brought up to them, did they attempt to correct the deficiency by filing a motion to amend until we filed a motion to dismiss the claim after several months of discussions on the matter, number one. Number two, the attorney who represented Mr. Lamed and the criminal proceeding was the same one who prepared the pleadings, knew Mr. Lamed, knew his wife was incapacitated, that his wife was schizophrenic, as referenced in the First Sentence Report, that she was interdicted was not. We never knew that. We presumed confidence as the law does, but he is the one who prepared those pleadings, and he's working with this client who was the curator, and they were, the client, the criminal defendant, had the duty to protect his own wife's interests, and the undercurator, the appellant, had the duty to protect and make sure the claim was filed right. There was no excusable neglect in this case. They did not do their duties under Louisiana law to make sure that her claim was properly filed and her claim was properly before this Court. I see that I have three seconds. Thank you, Your Honor. Judge Southwick, if I could answer your last question to counsel for the government about whether or not a claim can be amended, I would direct the Court's attention to page 14 of our brief. Courts have instead recognized that where a claim has satisfied the other requirements of Section 853, but simply was not signed under penalty of perjury by the petitioner, the claim can be easily corrected by an amended claim, citing United States v. Ward. In addition, on page 15 of our brief . . . Does that help you? I mean, we're talking about a much more significant defect. I mean, you're saying, I mean, we didn't have somebody in the proper representative capacity filing this on her part. There never was a claim. It's not just the absence of the signature. Well, there was certainly an attempt at a claim, a good-faith attempt. That's helpful to you, but it doesn't seem to me that it answers how we ought to resolve this case. I understand. In another case, in a case where the Court considered the appropriateness of claims signed on behalf of a competent individual pursuant to notarized power of attorney, the Court stated that it would have permitted the petitioners to satisfy the procedural requirements of 853 were it not for the fact that their claims must fail in the merits. In fact, this claim doesn't fail in the merits. This is a claim that they've acknowledged on the merits, which is quite extraordinary. Counsel, let me ask, though, you know, the case you just referenced talks about procedural, and I guess that kind of gets at what we're asking about here, is the fact that at the time this claim was filed, apparently the son did not have legal capacity to assert the claim. You know, is that procedural, or is that something a little more substantive? Is that what you're arguing, is that it's purely procedural? I would say that it's procedural in the sense that he's the only person in his entire family that could possibly file it. His father was incapacitated and convicted, his mother was interdicted, and his little brother is disabled. There's only one person left, and it's him, and he did the very best that he could, and I consider that procedural. If I could also, if Your Honor, please. Counsel referenced that there was no property referenced in Jefferson Parish. Respectfully submit that's incorrect. From page one of the verified notice of claim and application of adjudication, property number two is listed, 3837 Sukur Drive, Harvey, Louisiana. Harvey's in Jefferson Parish, so there is property in Jefferson Parish. Counsel talked about restitution of the Federal Debt Collection Act. To the best of my knowledge, the first time the Federal Debt Collection Act is raised for the first time is here, in the last two pages of their brief. I haven't seen it before, in the pleadings or any place. So it's sort of their position is, if you don't believe we went on column A, then we go to column B. She says that was mentioned in the district court, but regardless, I think the argument is, you're asking now for this chance to amend, and I gather the government is saying it would be futile because under the Debt Collection Act, this is going to get taken regardless. How do you respond to that? We disagree. First of all, they're talking about restitution and getting restitution. Restitution ceases at the death of the defendant, I believe is correct. And if restitution ceases at the death of the defendant, they don't have to go after anything. I can't go after anything of his or his family's because the defendant is dead. If that's the case, then we do have an argument. And by the way, just so we're clear, the victim in this case is the government. Well, the taxpayers who fund Medicare. It was a Medicare case, right? The government of the United States said vis-a-vis the taxpayers. You're absolutely right. And the people who get treatment from Medicare. Correct. People. Now, the government acknowledged the claim by selling the vehicles. And I think this is important. The government sold the vehicles, took half the money, gave the other half of the money to Mrs. Lamott. So to now say there is no claim here and it's not valid, we think, even though they reserve their rights, we think is a little bit disingenuous. Let me close, if I might, by referring to a sentence from the government's brief at page 23 in which they say, and I quote, and while the United States recognizes that a court may look favorably upon a disabled, innocent spouse in such situations, Mrs. Lamott is now deceased and no such equities favor the appellant. I would hope that we can do better than that on behalf of the government of the United States of America. And I thank you for your time and attention this morning.